**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Tudor Chirila, Administrator, THE ESTATE OF HOW TZU HUANG,

    Plaintiff,

v.

BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; and DOES I-V; and ROE ENTITIES I through X, jointly and severally,

    Defendants.

3:11-cv-00005-RCJ-WGC

**ORDER**

Currently before the Court are Defendants' Motion to Dismiss for Failure to Prosecute (#31), Defendants' Motion for Summary Judgment and to Dissolve Preliminary Injunction (#32), and Defendants' Motion to Expunge Lis Pendens (#33).

**BACKGROUND**

**A. Factual Background**

Prior to her death on December 23, 2008, decedent How Tzu Huang ("Huang") obtained a mortgage in April 2006 from Defendant Bank of America, N.A. ("Bank of America") on her home, the real property located at 4832 Meadow Springs Dr., Reno, NV 89509, APN Number 023-173-08. (Opp. Mot. Summ. J. Ex. 3, Deed of Trust (#37-3).)

Huang passed away on December 23, 2008, while taking a shower in an upstairs bathroom, resulting in water damage to the property. (Mot. Summ. J. Ex. E (#32-5).) Huang's estate (the "Estate") obtained several checks for the property damage from the insurer of the property (the "insurance checks") that were made out to both Defendant Bank of America and the administrator. (*Id.*) In order to be negotiated, the insurance checks required

Defendant Bank of America's endorsement. (*Id.*) However, Defendant Bank of America has refused to endorse the insurance checks or allow their deposit into the Estate's account due to a dispute over the use of the proceeds. (*Id.*) Counsel for the Estate sent a letter to Bank of America, dated August 12, 2009, disputing whether the proceeds must be used to make repairs. (*Id.*)

In January 2009, one of Huang's relatives, Chen-Hon Lu, allegedly wrote two checks from Huang's checkbook to himself in the amounts of $10,000 and $13,000 (the "forged checks"). (Opp. to Mot. Summ. J. Ex. 5 (#37-5).) Defendant Bank of America cashed the forged checks from Huang's account. (Mot. Summ. J. Ex. H (#32-8).)

The estate defaulted on the loan on May 1, 2009. (Mot. Summ. J. Ex. B, Notice of Default and Election to Sell (#32-2).) On July 13, 2010, ReconTrust Company, N.A. ("ReconTrust') recorded a Notice of Default/Election to Sell. (*Id.*)

**B. Procedural Background**

Plaintiff filed a complaint (Pet. Removal Ex. A, Complaint (#1-2)) in the Second Judicial District Court of the State of Nevada in and for the County of Washoe (the "State Court") on December 1, 2010. On December 15, 2010, the State Court issued a preliminary injunction enjoining Defendants from commencing a trustee's sale or foreclosure on the subject property. (Notice of Entry of Order, Ex. 1, Preliminary Injunction Order #(4-2).) The State Court further ordered Defendant Bank of America to endorse the insurance checks and deposit the funds in the Estate's account. (*Id.*)

On January 3, 2011, Defendants removed the case to the United States District Court for the District of Nevada via a petition (#1) for removal. On January 11, 2011, Defendants moved (#5) to dismiss the complaint (#1-2) pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court granted (#12) the motion to dismiss (#5) with leave to file a renewed motion to file an amended complaint. On March 1, 2011, Plaintiff filed its motion (#13) to amend the complaint. On October 14, 2011, the Court granted Plaintiff's motion (#13) to amend the complaint with respect to Plaintiff's proposed causes of action alleging wrongful payment of checks with forged endorsement; breach of contract; and breach of the implied

covenant of good faith and fair dealing. The Court denied leave to amend to include claims for wrongful foreclosure and unauthorized debt collection. The parties were ordered to brief the issue of the status of the State Court's preliminary injunction, and the parties submitted points and authorities.

On June 27, 2012, Defendants filed a Motion to Dismiss for Failure to Prosecute (#31), a Motion for Summary Judgment (#32), and a Motion to Expunge Lis Pendens (#33).

## MOTION TO DISMISS FOR FAILURE TO PROSECUTE (#31)

Defendants request that the Court dismiss the action for failure to prosecute under Federal Rule of Civil Procedure 41(b). Specifically, Defendants argue that Plaintiff failed to schedule an initial conference under Federal Rule of Civil Procedure 26(f), failed to provide its initial disclosures, and failed to establish a discovery plan.

Rule 41(b) provides that if a plaintiff "fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b). "A Rule 41(b) dismissal 'must be supported by a showing of unreasonably delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). The court must weigh the following factors in determining whether such dismissal is warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Id.* (quoting *Henderson*, 779 F.2d at 1423.)

Here, weighing the factors along with the requirement of unreasonable delay does not lead to a conclusion that dismissal under Rule 41(b) is warranted. While there is a public interest in resolving the case and managing the docket, there is also a strong public policy favoring disposition of the case on the merits. The Court cannot deny that there is prejudice to defendants in engaging in prolonged litigation involving a mortgage in default; however, much of the delay in the action is due to the necessity of allowing Plaintiff to amend its complaint to include proper claims. While Plaintiff may not have properly and promptly scheduled Rule 26(f) conferences or provided initial disclosures, Plaintiff claims that such delay

was due to the briefing on the issue of the status of the state court's preliminary injunction. Plaintiff represents that the initial conference was held on July 10, 2012, and the proposed scheduling order and initial disclosures were being prepared at that time. Defendants' Motion to Dismiss (#31) is accompanied by a Motion for Summary Judgment (#32), which provides an alternative means of resolving the action on its merits. For that reason, the Motion to Dismiss for Failure to Prosecute (#31) shall be denied.

## MOTION FOR SUMMARY JUDGMENT (#32)

### A. Legal Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171(1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec.*

*Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

**B. Discussion**

1. Forged Checks

Defendants argue that Plaintiff's causes of action based on the forged checks fails as a matter of law because an action to recover for forged checks is time-barred. Decedent Huang had a checking account with Bank of America governed by the Deposit Agreement and Disclosures ("the Agreement"). (Mot. Summ. J. Ex. G (#32-7).) The Agreement provides the following with respect to forged or unauthorized drawer's signature on checks:

> **Reviewing Your Account Statements**
> Your review of your statements, checks and other items is one of the best ways to help prevent the wrongful use of your account. You agree:
> - to review your statements, checks, and other items and reconcile them as soon as they are made available to you;
> - that our statements provide sufficient information to determine the identity and authenticity of any transaction including without limit, whether any are forged, altered or unauthorized if the statement includes the item number, amount and the date the item posted to your account;
> - to report any problems or unauthorized transactions as soon as possible; and
> - that 60 days after we send a statement and any accompanying items (or otherwise make them available) is the maximum

5

> reasonable amount of time for you to review your statement or items and report any problem or unauthorized transaction related to a matter shown on the statement or items. There are exceptions to this 60-day period. For forged, unauthorized or missing endorsements, you must notify us within the period specified by the state law applicable to your account. For substitute checks, you must notify us within 40 days to qualify for an expedited recredit.

(Mot. Summ. J. Ex. G at 25 (#32-7).) The Agreement further provides that, except as otherwise expressly provided elsewhere in the Agreement, if the account holder fails to notify Bank of America in writing of suspected problems or unauthorized transactions within sixty days after the bank statement is available, the account holder may not make a claim against the bank relating to the unreported problems or unauthorized transactions, "regardless of the care or lack of care we may have exercised in handling [the] account" and that the account holder may not bring any legal actions against the bank relating to those transactions. (*Id.*)

Plaintiff alleges that after Huang's death, Huang's relative Chen-Hon Lu drafted two checks on Huang's checking account with Bank of America in the amounts of $10,000 and $13,000. Huang's January 2009 account statement for the period of December 19, 2008 through January 20, 2009 identifies that a check for $10,000 was drawn on Huang's account on January 12, 2009. (Mot. Summ. J. Ex. H (#32-8).) The February 2009 account statement for the period of January 21, 2009 through February 17, 2009 identifies that a check for $13,000 was drawn on Huang's account on January 28, 2009. (Mot. Summ. J. Ex. I (#32-9).) The declaration, dated March 17, 2011, of Greg Lyles, a manager at Bank of America's Check Fraud Center, is attached as part of Exhibit F, and provides that Bank of America sends account statements to its account customers each month within two or three business days following the statement date as part of a routine and regularly conducted business activity. (Mot. Summ. J. Ex. F (#32-6).) Lyles states that the following exhibits contain true and correct copies of Huang's signature, the Agreement, Huang's January 2009 monthly account statement, and February 2009 account statement. (*Id.*) Lyles also declares that there were no reports filed by the Estate regarding checks drawn with forged signatures. (*Id.*)

Nevada law provides that if a bank sends or makes available an account statement, the customer must promptly notify the bank if the customer should reasonably have discovered

an unauthorized payment because of a purported signature on behalf of the customer. NEV. REV. STAT. § 104.4406.  In addition, "without regard to care or lack of care of either the customer or the bank" a customer who does not report his or her unauthorized signature within one year after a bank statement is made available to the customer may not assert against the bank the unauthorized signature.  NEV. REV. STAT. § 104.4406. Generally, the statute of limitations is three years for actions related to forged signatures on checks. NEV. REV. STAT. § 104.4111.  However, the statute of limitations and the required reporting period may be varied by agreement.  NEV. REV. STAT. § 104.4103.  That section provides:

> The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack of failure.

NEV. REV. STAT. § 104.4103.  Under the Agreement, Plaintiff had sixty days to notify Bank of America in writing of the checks bearing allegedly forged drawer's signatures.  While a Nevada court has not ruled that a shortened statute of limitations is valid in these circumstances, Nevada law expressly provides that the three-year statute of limitations may be varied by agreement, and courts in other jurisdictions have approved agreements providing similar, or even shorter, statutes of limitations.  *See, e.g.*, *Parent Teacher Ass'n, Public School 72 v. Mfrs. Hanover Trust Co.*, 524 N.Y.S.2d 336, 340 (N.Y. Civ. Ct. 1988).  In *Parent Teacher Ass'n*, the court considered an agreement shortening the statute of limitations to fourteen days of the delivery of an account statement.  The court noted that the agreement does not absolve the bank of its duty to use good faith and ordinary care, or absolutely bar the account holder from suit or excuse future liability.  *Id.*  Such agreements encourage "investigation and preservation of evidence" and "vigilance by both parties to a deposit contract, thus making continued fraud or wrongdoing less likely."  *Id.*  The court found that the agreement to shorten the statute of limitations was valid, enforceable, and binding on the parties.  *Id.*

We likewise find that the three-year statute of limitations on actions against a bank to recover amounts drawn by forged checks may be varied by agreements such as the Agreement in this case because Nevada law expressly provides for such agreements. Plaintiff claims that the Estate notified the Bank of America in June 2009 via the Bank of America's

7

employee and agent Paula Cobb, and that the Estate worked with Ms. Cobb to investigate the forged checks. (Opp. Mot. Summ. J. Ex. 4, Baker Aff. (#37-4).)  In an affidavit, William A. Baker, probate counsel for the Estate, declared that he worked with Paula Cobb in June, July and August of 2009 to investigate fraudulent checks and withdrawals against Huang's bank account after her death. (*Id.*) Defendants point out, however, that even assuming this is true, Plaintiff failed to make a report in writing, and June 2009 is not within the 60-day period required under the Agreement in any case if the period began to run once the account statements were delivered. Furthermore, Defendants provide evidence that Ms. Cobb was not employed by Bank of America during the dates Baker allegedly worked with Ms. Cobb to investigate the fraud. Ms. Cobb was laid off on April 3, 2009, and was not re-employed by the bank until August 17, 2009. (Reply, Ex. B (#41-2).)

While the statute of limitations would normally begin to run when the statement is delivered, there is some question as to whom these statements were delivered to and how soon the Estate was able to examine the account statements. In a California case, the California Court of Appeal noted that "it is not too great a burden in cases where the customer has died to delay the start of the notification period until a statement becomes available to a successor account holder." *Mac v. Bank of America*, 90 Cal. Rptr. 2d 476, 481 (Cal. Ct. App. 1999). Plaintiff argues that Ms. Cobb was a neighbor of Huang and that she retrieved Huang's mail after her death. Plaintiff also acknowledges that the Bank mailed the account statements, but disputes whether the retrieval of Huang's mail by Ms. Cobb began the running of the time period to report the forged checks. Therefore, the issue of when the bank made the account statements "available" to the Estate is indeterminable at this time, prior to discovery. What is clear, however, is that the Estate became aware of the allegedly forged checks at least by June 2009, when it allegedly investigated the issue with Ms. Cobb.

There is no dispute that the Estate failed to notify the bank in writing of the fraud within sixty days of becoming aware of the forged checks. The Estate claims that it notified, and worked with, an employee of the Bank of America, Ms. Cobb, to investigate the forged checks in June, July, and August 2009. Bank of America claims that Ms. Cobb was not an employee

8

at the time of such investigation, and thus, there is a dispute over whether the Bank received even verbal notice of the forged checks within sixty days of the Estate's discovery of the forged checks. While it is undeniable that written notice was not given, there is some dispute over whether the Bank had actual notice of the forged checks despite the lack of a written report. In some cases, the requirement of written notice has been considered waived or an inessential part of an agreement when there is evidence that the parties had actual notice. *See, e.g.*, *Gollihue v. Nat'l. City Bank*, 969 N.E.2d 1233, 1238-39 (Ohio Ct. App. 2011). In *Gollihue*, the court acknowledged that although courts generally should give effect to the plain meaning of the parties' contracts, in some circumstances, courts will not strictly enforce language requiring written notice. *Id.* at 1238. If the Estate duly notified the Bank within sixty days of the account statements showing forged checks becoming available to it, and the Bank failed to indicate that a written report must be submitted, and failed to act on the verbal notice, there may be question as to whether the Bank exercised reasonable care under the circumstances and whether actual notice to the Bank is sufficient to allow the Estate to proceed on the forged checks claim.

Several disputes of material fact regarding the forged checks remain at this time, as the Motion for Summary Judgment (#32) was filed before discovery concluded. For that reason, summary judgment on the forged checks claim shall be denied at this time.

### 2. Insurance Checks

Plaintiff also brought causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing relating to the insurance checks issued for repair of the water damage which occurred at the time of Huang's death.[1]

Bank of America provided a home loan secured by a deed of trust to Huang. (Mot. Summ. J. Ex. A, Deed of Trust (#32-1).) With respect to insurance proceeds, the deed of trust provides:

---

[1] Plaintiff's amended complaint (#21) lists ReconTrust as a defendant, but each cause of action is made against Bank of America only. To the extent that Plaintiff is claiming that any cause of action against Bank of America applies against ReconTrust as an agent for Bank of America, our analysis applies equally to both defendants.

9

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(Mot. Summ. J. Ex. A, Deed of Trust ¶ 5 (#32-1).)

Plaintiff defaulted on the mortgage on May 1, 2009. (Mot. Summ. J. Ex. B, Notice of Default (#32-2).) In a letter dated July 11, 2009, Plaintiff's probate attorney acknowledged that Plaintiff had received the insurance checks for the water damage claim to the Property. (Mot. Summ. J. Ex. C (#32-3).) On July 17, 2009, Bank of America wrote to Plaintiff, explaining that Plaintiff must endorse the insurance claim drafts, and that Bank of America would only release claim proceeds as the repairs are completed because the loan is in default. (Mot. Summ. J. Ex. D (#32-4).) Bank of America required that the repairs be completed by a licensed contractor, and that Plaintiff provide copies of the signed contract with the contractor, the contractor's estimate, the contractor's payment requirements, and insurance adjuster's estimate of damages. (*Id.*) In a letter dated August 12, 2009, Plaintiff's probate attorney responded that he was unaware that the mortgage is in default, and disputed that the funds are available only to make repairs. (Mot. Summ. J. Ex. E (#32-5).)

Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law because Plaintiff has not shown that Defendants breach of any term of the deed of trust or acted in any manner to contravene the purpose and spirit of the deed of trust. The language of the deed of trust clearly provides that the insurance proceeds should be applied to restoration or repair, and Bank of America retained the right to hold the proceeds until the work has been completed, or to disburse according to a payment schedule. Plaintiff is not entitled to the proceeds for a purpose other than repair or restoration unless such repair is deemed economically unfeasible or the home value would be lessened,

and the amount of the insurance checks exceeds the loan. Plaintiff's interpretation of the terms of the deed of trust misconstrues the language in order to avoid the contractual terms. Plaintiff argues that the terms allow the lender to "pocket the insurance proceeds and leave the homeowner homeless." (Opp. to Mot. Summ. J. (#37).) Nowhere in the evidence provided by both parties is there support for such an interpretation. While Bank of America did refuse to release the insurance proceeds without being provided information related to any ongoing or planned repair, Bank of America had the right to do so under the terms of the deed of trust. Plaintiff, on the other hand, disputed whether the proceeds should be used for the repair, and appeared to suggest that the proceeds may simply be released to Plaintiff to be used as it sees fit–for example, in order to cure the default and continue making mortgage payments. The language of the deed of trust does not allow Plaintiff to unilaterally use insurance proceeds released for purposes of repairing damage to the Property in that manner. There is no dispute that the Property was damaged and that the insurance checks were made out for that purpose. Bank of America did not have a duty, under the deed of trust, to release the funds to Plaintiff without protecting its interest in the Property, and summary judgment shall be granted on the claims relating to the insurance checks.

### 3. Preliminary Injunction

The State Court's preliminary injunction preventing Defendants from conducting a trustee's sale or otherwise transferring ownership of the Property shall not be dissolved at this time. While claims expressly dealing with the foreclosure and the mortgage have been dismissed, claims based on the forged checks remain. There is a question of material fact over whether the default could have been prevented had the forged checks not depleted the Estate's account. Until that question has been resolved, the Court declines to dissolve the preliminary injunction.

**MOTION TO EXPUNGE LIS PENDENS (#33)**

Defendant requests that the lis pendens in this action be expunged, along with the preliminary injunction entered into by the state court. For the reasons stated above, the Court also declines to order the lis pendens expunged until questions concerning the forged checks

and the Estate's account with Bank of America have been resolved.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion to Dismiss for Failure to Prosecute (#31) is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Summary Judgment and to Dissolve the Preliminary Injunction (#32) is **GRANTED IN PART AND DENIED IN PART**. The Motion (#32) is **GRANTED** with respect to the breach of contract claim, and the breach of implied covenant of good faith and fair dealing insofar as it is based on the insurance checks. The Motion (#32) is **DENIED** with respect to Plaintiff's claim for wrongful payment of checks with forged endorsement and claim for breach of the implied covenant of good faith and fair dealing based on the forged checks. The preliminary injunction entered by the State Court shall not be dissolved at this time.

IT IS FURTHER ORDERED that the Motion to Expunge Lis Pendens (#33) is **DENIED**.

DATED: This 25th day of January, 2013.

_____
United States District Judge