UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Tudor Chirila, Administrator, THE ESTATE OF HOW TZU HUANG,

        Plaintiff,

vs.

BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; and DOES I-V; and ROE ENTITIES I-X, jointly and severally,

        Defendants.

3:11-cv-00005-RCJ-WGC

ORDER

        This foreclosure case concerns, among other things, Defendant Bank of America's allegedly wrongful payment of forged checks. Pending before the Court are cross-motions for summary judgment, (ECF Nos. 51, 52), and Plaintiff's motion for leave to file a sur-reply, (ECF No. 59). For the reasons stated herein, the motions for summary judgment are denied, and the motion for leave to file is granted.

**I.    FACTS AND PROCEDURAL HISTORY**

        In April 2006, decedent How Tzu Huang ("Huang") granted a mortgage on her home, the real property located at 4832 Meadow Springs Dr., Reno, NV 89509, to Defendant Bank of America. (Deed of Trust, ECF No. 37-3). Huang also held personal deposit accounts with Bank of America, from which the mortgage payments were automatically withdrawn. (Account Statements, ECF No. 51-2, at 4–7).

        On December 23, 2008, Huang passed away while taking a shower in an upstairs bathroom, causing water damage to the property. (Baker Letter, ECF No. 32-5). Huang's estate

(the "Estate" or "Plaintiff") obtained several checks for the property damage from the insurer of the property (the "insurance checks"). (*Id.*). The checks listed both Bank of America and the administrator of the estate (the "Administrator") as payees. (*Id.*). Accordingly, they could not be negotiated without Bank of America's endorsement. (*Id.*). Due to a dispute over the use of the proceeds, however, Bank of America refused to endorse the checks. (*Id.*). On August 12, 2009, Counsel for the Estate sent a letter to Bank of America, contending that he was unaware of an enforceable limitation on the use of the proceeds. (*Id.*).

In January 2009, one of Huang's relatives, Chen-Hon Lu, allegedly wrote two checks from Huang's checkbook to himself in the amounts of $10,000 and $13,000 respectively (the "forged checks"). (Checks, ECF No. 57-5). Bank of America cashed the forged checks from Huang's account. (Account Statements, ECF No. 51-2, at 4–7).

The Estate defaulted on the loan in May 2009. (Notice of Default and Election to Sell, ECF No. 32-2). On July 13, 2010, Defendant ReconTrust Company, N.A. ("ReconTrust") recorded a Notice of Default/Election to Sell. (*Id.*).

On December 1, 2010, the Estate filed a complaint in the Second Judicial District Court of the State of Nevada (the "State Court"). (Compl., ECF No. 1-2). On December 15, 2010, the State Court issued a preliminary injunction, prohibiting Defendants from commencing a trustee's sale or otherwise foreclosing on the property. (Notice of Entry of Order, ECF No. 4-2). The State Court further ordered Bank of America to endorse the insurance checks and deposit the funds in the Estate's deposit account. (*Id.*).

On January 3, 2011, Defendants removed the case to this Court, (ECF No. 1), and promptly moved to dismiss, (ECF No. 5). The Court granted the motion to dismiss with leave to file a renewed motion to file an amended complaint. (ECF No. 12). On March 1, 2011, Plaintiff

moved to amend its complaint, (ECF No. 13), and the Court granted the motion with respect to the proposed causes of action for (1) wrongful payment of checks with forged endorsement; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. (Order, ECF No. 20). The Court denied leave to amend to include claims for wrongful foreclosure and unauthorized debt collection. (*Id.*). The Court also ordered the Parties to file points and authorities regarding the status of the State Court order. (*Id.*). The Parties complied.

On June 27, 2012, Defendants filed a motion to dismiss for failure to prosecute, (ECF No. 31), a motion for summary judgment and dissolution of the preliminary injunction, (ECF No. 32), and a motion to expunge lis pendens, (ECF No. 33). In an order entered on January 25, 2013, this Court granted in part and denied in part the motion for summary judgment and dissolution of the preliminary injunction. Specifically, the Court granted summary judgment as to the contract claims arising out of the insurance checks and denied the motion as to the claim for wrongful payment and the claim for breach of the implied covenant of good faith and fair dealing based on the forged checks. The Court declined to dissolve the preliminary injunction and denied each of Defendants' other motions.

The Parties have now filed cross-motions for summary judgment on the wrongful payment claim, and Defendants again seek dissolution of the preliminary injunction. (ECF Nos. 51, 52). Plaintiff has also moved for leave to file a sur-reply to the reply filed in support of Defendants' pending motion to dismiss. (ECF No. 59).

II.     **CROSS-MOTIONS FOR SUMMARY JUDGMENT**

   a. **Legal Standard**

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

1996). Pursuant to Federal Rule of Civil Procedure 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### b. Wrongful Payment of Forged Checks

Numerous material issues of fact preclude the grant of summary judgment, for either party, on the wrongful payment claim. Defendants argue that any action on the forged checks is time-barred and therefore fails as a matter of law. The Parties do not dispute that Huang's Bank of America checking account is governed by the Deposit Agreement and Disclosures ("the Agreement"). The Agreement provides the following with respect to forged checks:

> Reviewing Your Account Statements
>
> Your review of your statements, checks and other items is one of the best ways to help prevent the wrongful use of your account. You agree:
>
> - to review your statements, checks, and other items and reconcile them as soon as they are made available to you;
> - that our statements provide sufficient information to determine the identity and authenticity of any transaction including without limit, whether any are forged, altered or unauthorized if the statement includes the item number, amount and the date the item posted to your account;
> - to report any problems or unauthorized transactions as soon as possible; and
> - *that 60 days after we send a statement and any accompanying items (or otherwise make them available) is the maximum reasonable amount of time for you to review your statement or items and report any problem or unauthorized transaction related to a matter shown on the statement or items*. There are exceptions to this 60-day period. For forged, unauthorized or missing endorsements, you must notify us within the period specified by the state law applicable to your account. For substitute checks, you must notify us within 40 days to qualify for an expedited recredit.

(Agreement, ECF No. 37-2, at 16 (emphasis added)). The Agreement further provides that if the account holder fails to notify Bank of America, in writing, of suspected problems or unauthorized transactions, within sixty days after the bank has made the applicable bank statement available, the account holder may not assert a claim related to the unreported problems or unauthorized transactions, "regardless of the care or lack of care [the bank] may have


exercised in handling [the] account." (*Id.*). Where the sixty-day limit applies, the account holder may not assert any legal action related to the unauthorized transactions against the bank. (*Id.*).

As evidenced by the pending cross-motions for summary judgment, the Parties have failed to resolve several issues of material fact that preclude the Court from summarily applying the sixty-day limit to the instant dispute. The Court identified many of these factual issues, in great detail, in its earlier Order denying summary judgment on this claim:

> Plaintiff alleges that after Huang's death, Huang's relative Chen-Hon Lu drafted two checks on Huang's checking account with Bank of America in the amounts of $10,000 and $13,000. Huang's January 2009 account statement for the period of December 19, 2008 through January 20, 2009 identifies that a check for $10,000 was drawn on Huang's account on January 12, 2009. (Mot. Summ. J. Ex. H, ECF No. 32-8). The February 2009 account statement for the period of January 21, 2009 through February 17, 2009 identifies that a check for $13,000 was drawn on Huang's account on January 28, 2009. (Mot. Summ. J. Ex. I, ECF No. 32-9). The declaration, dated March 17, 2011, of Greg Lyles, a manager at Bank of America's Check Fraud Center, is attached as part of Exhibit F, and provides that Bank of America sends account statements to its account customers each month within two or three business days following the statement date as part of a routine and regularly conducted business activity. (Mot. Summ. J. Ex. F, ECF No. 32-6). Lyles states that the following exhibits contain true and correct copies of Huang's signature, the Agreement, Huang's January 2009 monthly account statement, and February 2009 account statement. (*Id.*). Lyles also declares that there were no reports filed by the Estate regarding checks drawn with forged signatures. (*Id.*).
>
> Nevada law provides that if a bank sends or makes available an account statement, the customer must promptly notify the bank if the customer should reasonably have discovered an unauthorized payment because of a purported signature on behalf of the customer. Nev. Rev. Stat. § 104.4406. In addition, "without regard to care or lack of care of either the customer or the bank" a customer who does not report his or her unauthorized signature within one year after a bank statement is made available to the customer may not assert against the bank the unauthorized signature. Nev. Rev. Stat. § 104.4406. Generally, the statute of limitations is three years for actions related to forged signatures on checks. Nev. Rev. Stat. § 104.4111. However, the statute of limitations and the required reporting period may be varied by agreement. Nev. Rev. Stat. § 104.4103. That section provides: "The effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack of failure." (*Id.*). Under the Agreement, Plaintiff had sixty days to notify Bank of America in writing of the checks bearing

allegedly forged drawer's signatures. While a Nevada court has not ruled that a shortened statute of limitations is valid in these circumstances, Nevada law expressly provides that the three-year statute of limitations may be varied by agreement, and courts in other jurisdictions have approved agreements providing similar, or even shorter, statutes of limitations. *See, e.g.*, *Parent Teacher Ass'n, Public School 72 v. Mfrs. Hanover Trust Co.*, 524 N.Y.S.2d 336, 340 (N.Y. Civ. Ct. 1988). In *Parent Teacher Ass'n*, the court considered an agreement shortening the statute of limitations to fourteen days of the delivery of an account statement. The court noted that the agreement does not absolve the bank of its duty to use good faith and ordinary care, or absolutely bar the account holder from suit or excuse future liability. *Id.* Such agreements encourage "investigation and preservation of evidence" and "vigilance by both parties to a deposit contract, thus making continued fraud or wrongdoing less likely." *Id.* The court found that the agreement to shorten the statute of limitations was valid, enforceable, and binding on the parties. *Id.*

We likewise find that the three-year statute of limitations on actions against a bank to recover amounts drawn by forged checks may be varied by agreements such as the Agreement in this case because Nevada law expressly provides for such agreements. Plaintiff claims that the Estate notified the Bank of America in June 2009 via the Bank of America's employee and agent Paula Cobb, and that the Estate worked with Ms. Cobb to investigate the forged checks. (Baker Aff., ECF No. 37-4). In an affidavit, William A. Baker, probate counsel for the Estate, declared that he worked with Paula Cobb in June, July and August of 2009 to investigate fraudulent checks and withdrawals against Huang's bank account after her death. (*Id.*). Defendants point out, however, that even assuming this is true, Plaintiff failed to make a report in writing, and June 2009 is not within the 60-day period required under the Agreement in any case if the period began to run once the account statements were delivered. Furthermore, Defendants provide evidence that Ms. Cobb was not employed by Bank of America during the dates Baker allegedly worked with Ms. Cobb to investigate the fraud. Ms. Cobb was laid off on April 3, 2009, and was not re-employed by the bank until August 17, 2009. (Reply, Ex. B, ECF No. 41-2).

While the statute of limitations would normally begin to run when the statement is delivered, there is some question as to whom these statements were delivered to and how soon the Estate was able to examine the account statements. In a California case, the California Court of Appeal noted that "it is not too great a burden in cases where the customer has died to delay the start of the notification period until a statement becomes available to a successor account holder." *Mac v. Bank of America*, 90 Cal. Rptr. 2d 476, 481 (Cal. Ct. App. 1999). Plaintiff argues that Ms. Cobb was a neighbor of Huang and that she retrieved Huang's mail after her death. Plaintiff also acknowledges that the Bank mailed the account statements, but disputes whether the retrieval of Huang's mail by Ms. Cobb began the running of the time period to report the forged checks. Therefore, the issue of when the bank made the account statements "available" to the Estate is

> indeterminable at this time, prior to discovery. What is clear, however, is that the Estate became aware of the allegedly forged checks at least by June 2009, when it allegedly investigated the issue with Ms. Cobb.
>
> There is no dispute that the Estate failed to notify the bank in writing of the fraud within sixty days of becoming aware of the forged checks. The Estate claims that it notified, and worked with, an employee of the Bank of America, Ms. Cobb, to investigate the forged checks in June, July, and August 2009. Bank of America claims that Ms. Cobb was not an employee at the time of such investigation, and thus, there is a dispute over whether the Bank received even verbal notice of the forged checks within sixty days of the Estate's discovery of the forged checks. While it is undeniable that written notice was not given, there is some dispute over whether the Bank had actual notice of the forged checks despite the lack of a written report. In some cases, the requirement of written notice has been considered waived or an inessential part of an agreement when there is evidence that the parties had actual notice. *See, e.g.*, *Gollihue v. Nat'l. City Bank*, 969 N.E.2d 1233, 1238–39 (Ohio Ct. App. 2011). In *Gollihue*, the court acknowledged that although courts generally should give effect to the plain meaning of the parties' contracts, in some circumstances, courts will not strictly enforce language requiring written notice. *Id.* at 1238. If the Estate duly notified the Bank within sixty days of the account statements showing forged checks becoming available to it, and the Bank failed to indicate that a written report must be submitted, and failed to act on the verbal notice, there may be question as to whether the Bank exercised reasonable care under the circumstances and whether actual notice to the Bank is sufficient to allow the Estate to proceed on the forged checks claim.
>
> Several disputes of material fact regarding the forged checks remain at this time, as the Motion for Summary Judgment (ECF No. 32) was filed before discovery concluded. For that reason, summary judgment on the forged checks claim shall be denied at this time

(Order, ECF No. 49, at 6–9).

Instead of resolving these factual issues, it appears that discovery has only amplified them. Indeed, the instant cross-motions appear to entirely ignore the Court's earlier analysis. Most significantly, "the [factual] issue of when the bank made the account statements 'available,'" (*Id.* at 8), not only remains, it is even more muddied by evidentiary disagreement. For example, while Plaintiff's probate counsel, William Baker, initially stated that he met with Huang's neighbor, and Vice President of Huang's Bank of America branch, Paula Cobb, in June,

July, or August 2009, to discuss the alleged forgery, (Baker Aff., April 4, 2011, ECF No. 37-4), he now confirms that the meetings did not occur until August and September of 2009—over six months after the last applicable bank statement was mailed to Huang's residence. (Baker Aff., Aug. 20, 2013, ECF No. 51-1; *see also* Pl.'s Answers to Interrogs., ECF 52-1, at 14). This, of course, raises questions as to why Baker waited so long to review, or even attempt to locate, Huang's missing mail or otherwise obtain copies of the bank statements. It likewise raises questions as to why Cobb, who was apparently quite familiar with the dispute between the Estate and the bank over the insurance proceeds, (*see, e.g.*, Baker Aff., April 4, 2011, ECF No. 37-4, at 2), failed to timely return Huang's mail, which she apparently obtained in violation of a federal criminal statute,[1] to the Estate. These questions are only compounded by, among other things, Defendants' new, and arguably substantiated, claim that the Estate knew about the forgeries, the forger's identity, and his motives, as early as March 2009, when it apparently relied on this information to justify the emergency appointment of the Administrator. (*See* Reply, Oct 3, 2013, ECF No. 58, at 4 (citing Verified Pet. for Appointment of Administrator, ECF No. 58-1)).

Stated simply, Defendants contend that, at the very latest, the statements were made available on March 17, 2009, the date that the Administrator was appointed. Specifically, Defendants argue that as of this date the Estate unquestionably knew about the forgeries and, as a Bank of America customer, had access to Huang's account statements. (*Id.*). Plaintiff forcefully disagrees, contending that the Administrator "did *not* know details concerting [*sic*] the bank accounts and transactions therein," (Sur-reply, ECF No. 60, at 2) (emphasis in the original), and

---

[1] *See* 18 U.S.C. § 1708 ("Whoever steals, takes, or abstracts . . . from or out of any . . . letter box, mail receptacle, or any mail route or other authorized depository for mail matter . . . any letter . . . or mail . . . [s]hall be fined under this title or imprisoned not more than five years, or both.").

that the statements were not made available until Baker received them from Cobb in August 2009. (*See, e.g.*, Pl.'s Mot. Summ. J., ECF No. 51, at 6.). Because the evidence in the record does not require either conclusion, the Court simply cannot find that there is no genuine issue of fact as to the date that the sixty-day limit began to run. With this predicate factual issue left unresolved, the Court cannot determine whether the bank received adequate notice of the forgeries prior to the expiration of the sixty-day limit. Therefore, the wrongful payment claim is unfit for summary judgment, and the pending cross-motions are denied.

     **a. Preliminary Injunction**

     In its prior Order, the Court denied a similar request to dissolve the preliminary injunction, reasoning:

> The State Court's preliminary injunction preventing Defendants from conducting a trustee's sale or otherwise transferring ownership of the Property shall not be dissolved at this time. While claims expressly dealing with the foreclosure and the mortgage have been dismissed, claims based on the forged checks remain. There is a question of material fact over whether the default could have been prevented had the forged checks not depleted the Estate's account. Until that question has been resolved, the Court declines to dissolve the preliminary injunction.

(Order, ECF No. 49, at 11). Defendants now characterize these factual questions as "lame," contending that the Estate presently holds unencumbered real estate valued at over $2,000,000 and that as of March 2012 it held $103,500 in cash. (Reply, ECF No. 58). This, however, does not show the absence of an issue of material fact. Specifically, Defendants have not refuted the Estate's claim that the Bank of America account represented the Estate's only available liquid assets, and that Huang's property taxes quickly depleted those funds, such that the $23,000 loss resulting from the fraudulent checks significantly hindered the Estate's ability to pay the mortgage. (Opp'n Mot. Summ. J., ECF No. 55, at 3). Therefore, there remains a question of

material fact with respect to whether the wrongful payment contributed to the default. Accordingly, the Court again declines to dissolve the preliminary injunction.

### III.   PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY

Local Rule 7-2(a)(c) allows a motion, a response, and a reply. No provision exists for filing a sur-reply. Thus, a party must obtain leave from the Court before filing a sur-reply. "A sur-reply may only be filed by leave of court, *and only to address new matters raised in a reply to which a party would otherwise be unable to respond.*" *Kanvick v. City of Reno*, No. 3:06-CV-00058, 2008 WL 873085, at *1, n.1 (D. Nev. March 27, 2008) (emphasis in original). Further, sur-replies "are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. W.*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).

Here, the Court acknowledges that Defendants, in their reply brief, offer new arguments and evidence tending to show that the Administrator knew about the forgeries in March 2009. (ECF No. 58, at 4). Such evidence is, of course, highly relevant to the instant dispute, and the Court is therefore inclined to consider it. Accordingly, Plaintiff is entitled to respond, and the motion for leave to file (ECF No. 59) is granted. The Court has considered the arguments presented in the sur-reply, (ECF No. 60), and concludes that they only further demonstrate the existence of a genuine factual issue as to the date that the statements were made available.

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (ECF No. 51) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF No. 52) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file a sur-reply (ECF No. 59) is GRANTED.

IT IS SO ORDERED.

Dated: February 14, 2014

_____
ROBERT C. JONES
United States District Judge